**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

**JAMES FREDERICK PERMENTER,**

      Plaintiff,

v.                                Civil Action No. 7:14-CV-104 (HL)

**FEDEX FREIGHT, INC.**,

      Defendant.

## ORDER

Plaintiff James Frederick Permenter, a veteran road driver for Defendant FedEx Freight, Inc., was terminated on May 21, 2012, for allegedly falsifying his driver log. Plaintiff, who was 50 years old at the time of his separation, contends that Defendant terminated him based not on his purportedly faulty record keeping but on his age alone, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. Now before the Court is Defendants' Motion for Summary Judgment. (Doc. 23). After reviewing the pleadings, briefs, depositions, and other evidentiary materials presented, and determining that there is no genuine dispute of the material facts, the Court finds that Defendant is entitled to judgment as a matter of law and grants Defendant's motion.

## I.    FEDERAL RULE 56 AND LOCAL RULE 56

Preliminarily, the Court must address Plaintiff's objections to the sworn declarations of Craig Donaldson, Anthony Bernhard, and Charlie Pullen. Plaintiff

argues generally that the affiants lacked prior knowledge of the information propounded, or provided information inconsistent with sworn deposition testimony, and that the affidavits contain inadmissible hearsay.

Under Federal Rule of Civil Procedure 56(c)(2), "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." As explained in the advisory committee's notes, the objection functions much like an objection raised at trial, and the "burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed.R.Civ.P. 56(c)(2) advisory committee's note to 2010 amendment. The rule, therefore, enables a party to submit evidence in an inadmissible form at the summary judgment stage that ultimately may be admissible at trial. For example, "a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form." Jones v. UPS Ground Freight, 683 F.3d 1283, 1293-94 (11th Cir. 2012) (internal quotation and citation omitted).

Upon review of the disputed affidavits, the Court is convinced that Defendant has carried its burden of persuading the Court that it will be able to present the evidence set forth in the affidavits in an admissible form at trial.

2

Accordingly, the Court will consider that evidence in the course of analyzing the present motion for summary judgment.

Of more concern to the Court is Plaintiff's total disregard for the requirements of Local Rule 56. Plaintiff's Statement of Disputed and Undisputed Facts (Doc. 28) complies in no part with the local rule, which provides, "The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of materials facts, numbered separately, to which the respondent contends there exists a genuine dispute to be tried. Response shall be made to each of the movant's numbered material facts." M.D.Ga. L.R. 56. Rather than responding to each numbered paragraph as directed by the rule, Plaintiff essentially has responded in the form of a supplemental brief, which is insufficient under the local rule. The Court accordingly deems admitted Defendant's statement of facts that are properly supported by citations to the record. M.D.Ga. L.R. 56; see also Mann v. Taser Intern., Inc., 588 F.3d 1291, 1303 (11th Cir. 2009) (holding that district court properly deemed defendant's statement of material facts admitted when plaintiff failed to comply with the local rule); BMU, Inc. v. Cumulus Media, Inc., 366 Fed. App'x 47, 49 (11th Cir. 2010) (affirming grant of summary judgment when respondent failed to file a response to movant's statement of undisputed facts).

3

## II.   FACTUAL BACKGROUND

Plaintiff James Frederick Permenter began working for American Freight at the Valdosta, Georgia Service Center as a road driver in September 1995. (Doc. 23, ¶ 1). At some point in 2001, Defendant FedEx Freight, Inc. acquired American Freight. (Id.). Defendant is a nationwide LTL (less-than-truckload) carrier of general commodity freight. (Id. at ¶ 2). Defendant's operation relies on both road drivers, like Plaintiff, who transport freight between service centers, and city drivers, who transport freight between service centers and customers. (Id.).

Approximately two years prior to his termination, Plaintiff placed a successful bid for what was known as the Spanish Fort "meet and turn" run ("Spanish Fort run"). (Id. at ¶ 9). The job required Plaintiff to depart with a load from the Valdosta Service Center around 7:00 p.m. (Id.). He then drove to Spanish Fort, Alabama, where he rendezvoused with another road driver at one of Defendant's vacant terminals. (Id.). The two drivers swapped loads, and Plaintiff returned with his new load to Valdosta. (Id.). Plaintiff typically made this run five nights per week. (Id.).

In early May 2012, Craig Donaldson, the Valdosta Service Center Manager, received instructions from his supervisors to review Plaintiff's Department of Transportation ("DOT") logs. (Id. at ¶ 11; Doc. 25-1, ¶ 4).

4

Apparently Defendant had received complaints from other drivers that Plaintiff frequently was an hour or more late returning from the Spanish Fort run, which had the effect of delaying the next run between Valdosta and Orlando, Florida. (Doc. 23, ¶ 11). Defendant instructed Donaldson to determine the cause of the delays. (Id.). Donaldson enlisted the assistance of Susan Lacey, a Human Resources Advisor for Defendant, who guided Donaldson throughout his investigation. (Id. at ¶ 12).

As a part of his investigation, Donaldson reviewed Plaintiff's DOT logs for the week of May 3, 2012 through May, 9, 2012. (Id.). Donaldson then compared the log entries to the GPS data retrieved from the message switch[1] in Plaintiff's truck.[2] (Id.) Donaldson identified the following discrepancies:

(a)     On May 3, 2012, Plaintiff recorded in his DOT driver log that he stopped for his lunchbreak in Caryville, Florida from 3:15 a.m. until 4:15 a.m. The

---

[1] Plaintiff argues that the GPS data is unintelligible and that none of Defendant's witnesses were able to decipher the relevant printouts. The Court finds Plaintiff's position on this point unsupported by the record.

[2] The parties refer to two different GPS mechanisms throughout the record: the message switch and the CN3 handheld electronic device that Defendant began issuing to road drivers beginning in March 2012. The handheld device enabled the driver to input trip information, including the identification of the truck and trailer being utilized during the trip, and also allowed the driver to download GPS data that both recorded the particular truck's location and calculated estimated arrival times. (Doc. 23, ¶¶ 7-8). Plaintiff contests the accuracy of the handheld device but makes no mention of the message switch. The Court is uncertain whether the equipment referenced is two independent devices. Ultimately, though, the distinction is immaterial.

message switch showed Plaintiff stopped in Sycamore, Florida for one hour and twenty-four minutes, from 4:25 a.m. until 5:49 a.m. (Id. at ¶ 13(a)).[3]

(b)    On May 4, 2012, Plaintiff recorded in his DOT driver log that he stopped for his lunchbreak in Caryville, Florida from 3:15 a.m. until 4:15 a.m. The message switch showed Plaintiff stopped in Sycamore, Florida for one hour and thirty-eight minutes, from 4:20 a.m. until 5:58 a.m. (Id. at ¶ 13(b)).

(c)    On May 5, 2012, Plaintiff recorded in his DOT driver log that he stopped for his lunchbreak in Caryville, Florida from 3:15 a.m. until 4:15 a.m. The message switch showed Plaintiff stopped in Sycamore, Florida for two hours and thirteen minutes, from 4:20 a.m. until 6:33 a.m. (Id. at ¶ 13(c)).

---

[3] None of Defendant's witnesses expressed any personal knowledge about the geographic location of Sycamore, Florida or the relative distance between Caryville and Sycamore. In his deposition, Donaldson testified only that Sycamore is a city in Florida located along I-10 just west of Tallahassee. (Doc. 29-3, p. 17). An online Google Maps search reveals that there are approximately 69 miles between the two cities. See Google Maps, www.google.com/maps (last visited March 3, 2016). Since Google Maps is a "source[ ] whose accuracy cannot reasonably be questioned" when used to determine general distances, the Court takes judicial notice of this Google Maps search. See Fed.R.Evid. 201(b)(2), (c)(1); see also Cobb Theatres III, LLC v. AMC Entm't Holdings, Inc., 101 F.Supp.3d 1319, 1329 (N.D.Ga. March 20, 2015) (citing United States v. Proch, 637 F.3d 1262, 1266 n. 1 (11th Cir. 2011) (indicating that courts do occasionally take judicial notice of maps); Pahl v. Thomas, 718 F.3d 1210, 1216 n. 1 (10th Cir. 2013) (taking judicial notice of Google Maps to illustrate the general location of events relevant to the litigation); Global Control Sys., Inc. v. Luebbert, 2015 WL 753124, at *1 n. 1 (W.D.Mo. Feb. 23, 2015) (taking judicial notice of Google Maps to establish the approximate distance between two locations)).

(d)    On May 8, 2012, Plaintiff recorded in his DOT driver log that he stopped for his lunchbreak in Caryville, Florida from 3:15 a.m. until 4:15 a.m. The message switch showed Plaintiff stopped in Sycamore, Florida for one hour and twenty-nine minutes from 4:20 a.m. until 5:49 a.m. (Id. at ¶ 13(d)).

(e)    On May 9, 2012, Plaintiff recorded in his DOT driver log that he stopped for his lunchbreak in Tallahassee, Florida from 5:15 a.m. until 6:15 a.m. The message switch showed Plaintiff stopped in Sycamore, Florida for one hour and twenty-three minutes, from 4:25 a.m. until 5:48 a.m. (Id. at ¶ 13(d)).[4]

Plaintiff was aware that Defendant's meal and break policy provided for a one-hour lunch break. (Doc. 26-1, p. 54). Plaintiff also understood that, according to policy, if he needed to exceed the one hour break, for example if he was fatigued, it was his responsibility to notify central dispatch. (Doc. 23, ¶ 17). Most importantly, Plaintiff expressed understanding about the importance of maintaining an accurate, up to date DOT log. (Id. at ¶ 18).

After reviewing Plaintiff's DOT log book and the GPS data, Donaldson and Lacey noted three discrepancies between the two: inconsistencies in the location of Plaintiff's break, the time Plaintiff took each break, and the duration of each break. (Id. at ¶ 12). Donaldson and Lacey thereafter concluded that Plaintiff

---

[4] An online Google Maps search shows that there are approximately 37 miles between Sycamore and Tallahassee. See Google Maps, www.google.com/maps (last visited March 3, 2016).

falsified his DOT log book and determined that further investigation was warranted. (Id. at ¶ 15).

Donaldson met with Plaintiff on May 10, 2012 to address the inconsistencies. (Id. at ¶ 16). When advised that the data retrieved from the message switch in Plaintiff's truck did not correspond with Plaintiff's log, Plaintiff replied that he was "caught like a fox in the hen house." (Id.). Plaintiff provided a written statement, in which he explained, "I made a mistake on log book, put wrong city and time on log after returning to center." (Id.). Donaldson informed Plaintiff that he was relieved of his duties pending an investigation. (Id.).

The following day, May 11, 2012, Donaldson met with Plaintiff again along with Operations Supervisor Ben Prince. During this encounter, Donaldson posed a series of questions to Plaintiff, to which Plaintiff provided written responses:

- Question: Freddy how much time does this run allow for a break?
  Answer: 1 hour

- Question: Why did you take a longer break?
  Answer: Fatigue

- Question: Why on 5-8-2012 does your log show a break from 3:15 am to 4:15 am but the GPS log shows from 4:20-5:49?
  Answer: Mistake doing my log

- Question: Why did you show only an hour if you were stopped for a total of 89 min?
  Answer: Fatigue

- Question: You put that you were in Caryville on the log break but actually show in Sycamore why?

8

Answer: Made a mistake after returning to center

- Question: For the previous four days you show the same patters [sic] of inconsistencies in times and locations why?
  Answer: Made a mistake on my log on returning

- Question: What are the rules for when you are suppose [sic] to fill out the log?
  Answer: Change of duty or when stop

- Question: Why would you fill out your log when you return?
  Answer: Habit, always did it that way

- Question: Why are you marking a 60 min break but taking a break averaging 90 min long?
  Answer: Fatigue

- Question: You made the comment to me that you were caught "in the Hen House." Why did you say that?
  Answer: Because of the information [Craig] had

(Id. at ¶ 19). Later that same day, Lacey called Plaintiff and asked a similar set of questions. (Id. at ¶ 20). Plaintiff reaffirmed the responses he provided to Donaldson and Prince. (Id.). When Lacey inquired why Plaintiff was exceeding the time permitted for his break, Plaintiff responded, "I must have gone over. I'm not always looking back at the screen to check the time. When I get back [to Valdosta] I fill out the log. When I get back I fill out the log. I show an hour because it's supposed to be a [sic] hour lunch." (Id.). At the conclusion of the telephone call, Lacey informed Plaintiff that the matter remained under investigation. (Id.).

As a part of the continuing investigation, Defendant reviewed the DOT logs and GPS data for the two other Valdosta road drivers assigned to the Spanish Fort Run, Richard Peterson and Leslie Smyth. (Id. at ¶ 21). Defendant ascertained that both Peterson and Smyth took breaks longer than the allotted hour without notifying dispatch. (Id.). However, the log books for both drivers reflected time and location entries that were consistent with their message switches. (Id.). Defendant, therefore, concluded that these two drivers had not falsified their log books. (Id.). However, Defendant verbally counseled each driver for taking breaks in excess of an hour without telling dispatch and advised that further policy violations could result in additional disciplinary action. (Id.).

Lacey thereafter compiled all of the information gathered during the investigation and prepared a Corrective Action Recap, summarizing the results of the entire investigation and reviewing Plaintiff's past disciplinary history. (Id. at ¶ 22). She also reviewed Defendant's Employee Handbook, which specifically classifies falsification of DOT logs as a violation of Defendant's Standards of Conduct and as an offense that may result in discharge. (Id.). At the conclusion of the Corrective Action Recap, Lacey recommended Plaintiff for termination. (Id.).

The Corrective Action Recap was reviewed by three additional levels of management. (Id. at ¶ 23). First, Craig Thompson, the Managing Director of

District Operations concurred in recommendation. (Id.). Next, Defendant's in-house Legal Department reviewed the report. (Id.). Finally, Charlie Pullen, Division Human Resources Manager, Field HR, located in Atlanta, Georgia, reviewed Lacey's report and made the final decision to terminate Plaintiff. (Id.). On May 21, 2012, Donaldson contacted Plaintiff and notified him of his termination. (Id. at ¶ 24).

Several events transpired following Plaintiff's termination. Plaintiff's initial reaction was to engage legal counsel to assist him in filing an appeal to Defendant's Termination Appeal Review Committee ("TARC"). (Id. at ¶ 25). Plaintiff's substantive argument on appeal was that the CN3 handheld unit was defective and would freeze or not function properly in remote areas. (Id. at ¶ 26). Plaintiff also argued that "any inaccuracies in my logbook were due to honest mistakes rather than made 'willfully,'" and that Defendant should not have taken the extreme measure of terminating him. (Doc. 26-1, p. 162). After reviewing the record, the TARC Committee denied Plaintiff's appeal and upheld the termination. (Doc. 23, ¶ 12).

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Counsel ("EEOC") on September 8, 2012. (Id. at ¶ 37). He reported to the EEOC that Defendant informed him that he was terminated for falsifying

records but that he believed he had been "discriminated against because of my age (50)" in violation of the ADEA. (Doc. 26-1, p. 164).

Then, sometime in late September 2012, Plaintiff received a visit from an elderly acquaintance by the name of Larry Boyd. (Doc. 23, ¶ 35). Around September 25, 2012, Boyd responded to a Craig's List advertisement for a used truck for sale in Lee, Florida. (Id.). The truck happened to belong to Donaldson, Plaintiff's former supervisor. (Id.). While Boyd inspected the vehicle, he and Donaldson struck up a friendly conversation, which included an exchange about current and past employment. (Id.). After Donaldson revealed that he worked for Defendant, Boyd mentioned that he, too, used to drive a truck but declared, "Of course, I'm too old now." (Id.). In response, Donaldson allegedly replied, "yeah, I fired one the other day because he was too old." (Id.). According to Boyd, Donaldson identified the terminated worker as Plaintiff. (Id.).[5]

On March 31, 2014, the EEOC issued a Notice of Right to Sue at Plaintiff's request. (Id. at ¶ 37). Plaintiff initiated this lawsuit on July 1, 2014. (Id.).

## III.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter

---

[5] Donaldson recollects discussing the sale of the truck with Boyd but denies any conversation about Plaintiff or the reason for Plaintiff's termination. (Id. at ¶ 36).

of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court must evaluate all of the evidence, together with any logical inferences, in the light most favorable to the nonmoving party. Id. at 254-55. The court may not, however, make credibility determinations or weigh the evidence. Id. at 255; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of a material fact." Celotex, 477 U.S. at 323 (internal quotation omitted). If the movant meets this burden, the burden shifts to the party opposing summary judgment to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the movant is not entitled to judgment as a matter of law. Id. at 324-26. This evidence must consist of more than conclusory allegations. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). In sum, summary

judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

## IV.   DISCUSSION

Plaintiff alleges in his single count Complaint that Defendant discriminated against him on the basis of his age in violation of the ADEA. The ADEA, which applies to individuals who are at least 40 years old, makes it unlawful for an employer to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. §§ 623(a)(1), 631(a). To prevail in an action under the ADEA, an employee must establish that his age was the "but for" cause of the adverse employment action. Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176 (2009).  This showing may be made through either direct or circumstantial evidence. Mora v. Jackson Mem'l Found., Inc., 597 F.3d 1201, 1203 (11th Cir. 2010). Plaintiff here relies on both direct and circumstantial evidence, which the Court will address in turn.

### A.   Direct Evidence of Discrimination

The Eleventh Circuit defines direct evidence of discrimination as evidence that "reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." Wilson v. B/E

14

Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004) (quoting Damon v.

Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1358 (11th Cir. 1999))

(internal quotations omitted). Stated another way, direct evidence "is evidence

which, if believed, would prove the existence of a fact in issue without inference

or presumption." Burrell v. Bed. Of Trs. Of Ga. Military Coll., 125 F.3d 1390, 1393

(11th Cir. 1997) (citations omitted). Courts have found "only the most blatant

remarks, whose intent could be nothing other than to discriminate on the basis of

age, to constitute direct evidence of discrimination." Carter v. City of Miami, 870

F.2d 578, 582 (11th Cir. 1989). "[R]emarks . . . unrelated to the decisionmaking

process itself are not direct evidence of discrimination." Standard v. A.B.E.L.

Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998). Rather, in order to qualify as

direct evidence, "the evidence must directly relate in time and subject to the

adverse employment action at issue." Jones v. BE&K Eng'g Co., 146 Fed. App'x

356, 358 (11th Cir. 2005) (holding that statements made during the arbitration

held subsequent to the plaintiff's termination and not during the decision making

process are not direct evidence of age discrimination); see also Scott v.

Suncoast Beverage Sales Ltd., 295 F.3d 1223, 1227 (11th Cir. 2002) (finding that

a statement made two and a half years prior to the plaintiff's termination did not

qualify as direct evidence of race discrimination). The biased statement,

accordingly, must "be made concurrently with the adverse employment event,

15

such that no inference is necessary to conclude that the bias necessarily motivated the decision." Williamson v. Adventist Health Sys./Sunbelt, Inc., 372 Fed. App'x 936, 940 (11th Cir. 2010) (citing Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1359 (11th Cir. 1999)).

Plaintiff relies heavily on the interchange between Donaldson and Boyd in support of his claim of age discrimination and asserts that Donaldson's purported commentary is direct and indisputable evidence that Defendant targeted Plaintiff for termination based on his age. According to Plaintiff, sometime in September 2012, more than four months after Plaintiff's termination, Boyd, a casual acquaintance of Plaintiff's who is otherwise unrelated to this case, traveled to Lee, Florida in response to a Craig's List advertisement for a truck in which Boyd was interested. The truck happened to belong to Donaldson. While Boyd inspected the truck, he and Donaldson engaged in small talk, which eventually led to a conversation about past and present employment. After Boyd learned that Donaldson worked for Defendant, he remarked that while he used to drive trucks he was "too old now." (Doc. 23, ¶ 35). Donaldson then, unsolicited, allegedly offered that he recently fired Plaintiff "because he was too old." (Id.).

Although Donaldson's alleged comment may provide circumstantial evidence of discriminatory intent, the statement was made outside of the context of the decision making process and is not sufficiently related in time to the

adverse employment decision to constitute direct evidence. To conclude otherwise would require the Court to draw an impermissible inference of bias. Accordingly, the Court finds that no direct evidence of age discrimination exists in this case.

### B.   Circumstantial Evidence of Discrimination

The Eleventh Circuit evaluates ADEA claims premised on circumstantial evidence by applying the burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Sims v. MVM, Inc., 704 F.3d 1327, 1332 (11th Cir. 2013). Under McDonnell Douglas, the plaintiff bears the initial burden of establishing a prima facie case of age discrimination. Chapman v. AI Trans., 229 F.3d 1012, 1014 (11th Cir. 2000). If the plaintiff is able to make out a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the employment decision. Id. The employer's burden "is merely one of production; it need not persuade the court that it was actually motivated by the proffered reason. It is sufficient that the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." Id. (quoting Combs v. Plantation Patterns, 106 F.3d 1519, 1528) (internal quotation marks omitted). Provided the employer can come forward with one or more reasons, "the presumption of discrimination is eliminated and the plaintiff has the opportunity to come forward with evidence,

including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment action." Id. (internal quotation marks omitted).

To establish a prima face case of disparate treatment under the ADEA, a plaintiff must show that (1) he is a member of a protected age group; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) he was treated less favorably than a similarly situated employee outside his protected age group." Rouse v. Donley, 2012 WL 1188306, at *6 (M.D.Ga. Apr. 9, 2012) (citing Horn v. United Parcel Servs., Inc., 433 Fed. App'x 788, 793 (11th Cir. 2011)). It is undisputed that Plaintiff, who was 50 years old at the time of his termination, was a member of a protected age group; that he was qualified to work as a road driver; or that he suffered an adverse employment action. Accordingly, the only question before the Court is whether Plaintiff has produced an adequate comparator to support his contention that he was treated less favorably than a similarly situated employee outside of his protected age group.

To draw a valid comparison, a plaintiff must demonstrate that he and any proffered comparators "are similarly situated in all relevant aspects." Holifield v. Reno, 115 F.3d 1555, 1562. In the context of disciplinary action, "the quantity and quality of the comparator's misconduct [must] be nearly identical to prevent

18

courts from second-guessing employers' reasonable decisions and confusing apples with oranges." Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999). "[I]t is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." Holified, 115 F.3d at 1562; see also Rioux v. City of Atlanta, Ga., 520 F.3d 1269, 1281 (11th Cir. 2008) ("The most important factors in a comparator analysis in the disciplinary context are the nature of the offenses committed and the nature of the punishment imposed."). Summary judgment is appropriate where the plaintiff fails to demonstrate the existence of a similarly situated employee and where there is no other evidence of discrimination. Holifield, 115 F.3d at 1562.

Plaintiff offers two comparators for the Court's consideration: Richard Peterson and Tim Taylor. Plaintiff alleges that Peterson, who was 40 years old at the time of Plaintiff's termination and also drove the Spanish Forte run, committed the same logging error as Plaintiff and yet only received a verbal reprimand while Plaintiff was terminated. During its investigation of Plaintiff, Defendant examined Peterson's DOT log book in comparison to the GPS information stored in his truck's message switch. Even though Defendant did ascertain that Peterson was extending his lunch break beyond the sanctioned hour without first notifying central dispatch, the crucial difference between Peterson and Plaintiff is that Peterson accurately recorded the time and length of

his breaks. There also is no evidence that Peterson failed to accurately note the location where he took his breaks. Peterson, thus, is not similarly situated to Plaintiff in all relevant respects relating to the misconduct alleged. The more salient observation is that Peterson falls within Plaintiff's protected class, i.e. individuals 40 years of age or older at the time of Plaintiff's termination. He accordingly is not a proper comparator for the purpose of establishing Plaintiff's prima facie case.

Tim Taylor is also not a proper comparator. Taylor was 43 years old at the time of Plaintiff's termination, placing him within Plaintiff's protected class and eliminating him as a viable comparator. (Doc. 23, ¶ 31). Even if Taylor's age did not pose an obstacle for Plaintiff, Taylor's alleged misconduct bears no similarity to Plaintiff's. In March 2011, a Georgia State Patrolman pulled Taylor over for speeding. (Id. at ¶ 32). During the traffic stop, the patrolman performed a DOT inspection, which included review of Taylor's DOT log. (Id.). The patrolman discovered that Taylor was recording Wednesday's log entries on Monday's page. (Id.). Apparently, Taylor inadvertently forgot to remove the pages from his log book for Saturday and Sunday, so when he commenced his work duties on Monday, he began entering Monday's data on Saturday's page, throwing off the remainder of his daily entries. (Id.). The information recorded in the log was accurate, just on the wrong page. (Id.). The patrolman issued Taylor a citation for

failure "to retain previous 7 days" of his log. (Id.). Defendant also issued a verbal counseling and suspended Taylor for three days. (Id.). Neither the patrolman nor Defendant accused Taylor of falsifying his log book. (Id.). The Court therefore finds that Taylor was not similarly situated in all relevant respects to Plaintiff and that he is an invalid comparator. In the absence of a proper comparator, Plaintiff cannot make out a prima facie case of discrimination.

Even though Plaintiff has failed to set forth a prima facie case of age discrimination, his claims may survive summary judgment if the record, viewed in a light most favorable to Plaintiff, presents "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011) ("[E]stablishing the elements of the McDonnell Douglas framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case."). The only evidence proffered by Plaintiff that his age was the "but for" causation of his termination is the alleged statement made by Donaldson to Boyd. This one comment alone falls short of creating a "convincing mosaic" that would permit a reasonable jury to infer intentional discrimination by Defendant. First of all, Donaldson made the purported statement that he terminated Plaintiff because he had become too old for the job at least four months after Plaintiff's termination.

Thus, the connection between the statement and the decision to terminate Plaintiff is tenuous at best. Second, Donaldson's role in Plaintiff's termination was limited to conducting the initial fact finding investigation and to making the final telephone call to Plaintiff informing him of his termination. The ultimate decision to terminate Plaintiff filtered through operations management, two levels of human resources, and Defendant's legal department. Defendant offers no evidence that his age influenced the decision-making of any these various levels of upper-level management. Absent some other evidence linking Defendant's decision to terminate Plaintiff to Plaintiff's age, there is insufficient evidence to permit a reasonable jury to conclude that Plaintiff's age was the "but for" cause of his termination. Plaintiff's claim that Defendant discriminated against him on the basis of his age, therefore, must fail as a matter of law.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 23) is granted, and this case is dismissed with prejudice.

**SO ORDERED**, this the 7th day of March, 2016.

*s/ Hugh Lawson*_____
**HUGH LAWSON, SENIOR JUDGE**

aks